# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| JAMONTE JAMAR FLETCHER,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN RICKY FOXWELL,<br>CAPTAIN ERIC KAISER and<br>MAJOR MONIKA BITTINGHAM,<br><br>Defendants. | Civil Action No.: TDC-18-2721 |

## MEMORANDUM OPINION

Plaintiff Jamonte Jamar Fletcher, an inmate confined at Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed a civil action against ECI Warden Ricky Foxwell, Captain Eric Kaiser, and Major Monika Bittingham, for allegedly mishandling his incoming mail. Fletcher claims that Defendants violated his constitutional rights under the First and Fourteenth Amendment to the United States Constitution and violated applicable state law and prison regulations. Fletcher seeks monetary damages and declaratory and injunctive relief. Presently before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion is GRANTED.

## BACKGROUND

Fletcher has been incarcerated at ECI since February 13, 2014. According to Fletcher, since his arrival he has "received all the certified mail that my family, loved ones and friends sent

to ECI for me as legal mail," which enabled him to sign the receipt personally and ensured he would receive it within 24 hours of its arrival at the prison. Am. Compl. ¶ 10, ECF No. 5. Fletcher asserts that this procedure is required by "prison policy, state and federal law." *Id.* Fletcher notes that Maryland regulations relating to inmate mail provide that "Incoming mail may not be held for more than 24 hours, excluding weekends and holidays, except when it contains contraband." Md. Code Regs § 12.02.20.05(D) (2019).

As of December 2016, Fletcher stopped receiving certified mail as though it were legal mail and no longer received it within 24 hours after it arrived at ECI. ECI mailroom staff began signing the receipts for certified mail, and Fletcher did not receive his certified mail until "7 days or longer after it entered the mailroom in ECI." Am. Compl. ¶ 12. As a result, Fletcher claims, he has missed received commissary items he needed and repeatedly had to reorder such items, including copy cards and hygiene products. On May 8, 2017, Defendant Captain Monika Brittingham, the mailroom supervisor at ECI, posted a memorandum informing inmates of the new policy that certified mail would "no longer be processed and sent in with the Legal Mail" and that certified mail would "be processed and sent in with the General Inmate Mail." ECI Mem. re Certified Mail, Am. Compl. Ex. 6, ECF No. 5-8. Defendant Captain Eric Kiser, the current ECI mailroom supervisor, has continued that policy. Fletcher's family and friends have continued to pay the fees to send mail to him as certified mail with the expectation that it will be delivered to him within 24 to 48 hours.

On February 14, 2018, Fletcher filed an Administrative Remedy Procedure grievance ("ARP") complaining about this change in policy. Although Fletcher's ARP was signed by Correctional Officer Fontaine on February 15, 2018, Fletcher asserts that he did not receive notice that it had been received by the Warden's office. After Fletcher filed an informal complaint and

was informed that his ARP could not be found, he contacted the Commissioner of Correction, who informed him on March 8, 2018 that the ARP had been forwarded to the Warden for a response. The ARP was dismissed on March 16, 2018 on the ground that the mail at issue was not legal mail and thus not subject to the requirements applicable to legal mail. Fletcher asserts that Warden Foxwell signed the ARP dismissal and was aware of the ECI policy on certified mail and that it violated the law and prison policies.

According to Fletcher, he continued to not receive mail for seven days or longer, which delayed his receipt of money orders and thus caused him to have hygiene products withheld because he did not have sufficient funds in his commissary account. For example, he filed a complaint on March 3, 2018 about a $50 money order that arrived at ECI on February 23, 2018 but was not delivered to him for over seven days. On March 6, 2018, Fletcher was informed that that Lt. Clayton had spoken to the mailroom staff and that Fletcher would "receive money order today." ECI Records at 46, Mot. Summ. J. Ex. 1 at 46, ECF No. 21-2. Later, on June 1, 2018, Fletcher wrote a letter to the ECI mailroom to complain that a letter sent by Beverly Waters had been held in the mailroom in violation of state laws and prison policies.

On another mail issue, on June 25, 2018, Fletcher filed an ARP claiming that Officer W. Barnette was delivering mail to other inmates on his housing unit but refusing to deliver Fletcher's mail to him. When the ARP was investigated, Barnette denied the allegation, and another inmate claimed that Fletcher was lying because "he had it in for Barnette." ECI Records at 55. The ARP was dismissed because documentation showed that the mail had been delivered, and there was no evidence to substantiate the claim.

Defendants acknowledge that incoming mail to Fletcher was either returned to its sender or partially withheld on a few occasions for security reasons, consistent with prison regulations.

3

For example, on January 26, 2018, ECI withheld as contraband three photographs enclosed with a letter from Anthony Harris because they depicted gang signs and were deemed "security sensitive." ECI Records at 28-30. On March 13, 2018, Fletcher filed an informal complaint regarding these photographs, claimed that the withholding violated Maryland regulations, and threatened a lawsuit. In response, ECI officials maintained that the withholding was justified under prison directives. Fletcher sought to appeal the matter to the Commissioner of Correction on the grounds that the photos did not show the use of gang signs and continued to threaten a lawsuit.

On March 6, 2018, ECI withheld two photographs enclosed with a letter from Jermaine Ancrum-El, an inmate at Western Correctional Institution ("WCI"), because the photographs depicted gang signs. In a March 15, 2018 appeal to Maryland Division of Correction ("DOC") Headquarters, Fletcher explained that Jermaine Ancrum-El is his father and asserted that the mail was withheld from him for more than 24 hours and that he did not receive notice of the withholding of the photographs for five days. No response from the DOC appears on the appeal form.

On another occasion, a March 28, 2018 letter from Kameisha Perry, an inmate at the Maryland Correctional Institution for Women, was returned to sender for violating a correctional "Information Bulletin," which prohibits inmates from corresponding with inmates from other institutions with the exception of immediate family, co-defendants in an active lawsuit, and other exceptional circumstances. ECI Records at 17-18. In an April 3, 2018 ARP contesting this decision, Fletcher stated that Perry is the mother of his child. The ARP was procedurally dismissed because the administrative remedy procedure may not be used to address decisions to withhold mail.

On June 29, 2018, Fletcher was informed that a letter sent by Beverly Waters by certified mail was returned because it contained a letter from another inmate. In an ARP complaining about

this matter, Fletcher asserted that the mail actually included of legal documents. The ARP was procedurally dismissed because the decision to withhold mail may not be resolved by filing an ARP. According to Susan Shumaker, the current head of the ECI mailroom, the letter from Waters included a letter from Perry, who is a Maryland prison inmate.

On July 11, 2018, a money order sent to Fletcher was returned because it was unsigned and the bank would not accept such an order. When Fletcher appealed the decision to return the money order, he claimed that it had been sent that way "numerous times yet for some reason now you want to send it back." *Id.* at 27. He also asked the remainder of the mailing to be provided to him, without the money order. Warden Foxwell denied the request on the grounds that because "[w]e do not accept Western Union money transfers" and the money order was unsigned, the "entire letter was returned." *Id.*

In her declaration, Shumaker states that where the ECI mailroom is staffed by four people who are charged with processing mail for approximately 3,600 inmates, it does not log incoming and outgoing general mail. Legal mail is logged and must be opened in the inmate's presence. Incoming certified mail is also logged but need not be signed for by the inmate. According to Shumaker, the certified mail logs show that Fletcher has only received certified mail twice since his arrival at ECI: once on June 20, 2017 and once on June 4, 2018.

## DISCUSSION

In the Amended Complaint, Fletcher asserts that the policy of having ECI personnel sign for certified mail and the seven-day delays in delivering such mail to him violate his constitutional rights, including First Amendment rights, as well as state laws. In their Motion, Defendants seek dismissal or summary judgment on the basis that: (1) the Amended Complaint does not allege a deprivation of any rights, constitutional or statutory, entitling Fletcher to relief; (2) Fletcher has

5

failed to establish that the named Defendants were personally involved in the alleged violations; (3) a violation of state law or prison regulations and policies does not support a federal due process claim; (4) Fletcher's assertions that he was denied mail from friends and family does not support a constitutional access-to-courts claim; (5); denial of non-legal mail that is deemed contraband or otherwise violates prison rules does not violate the First Amendment; and (6) Defendants are entitled to qualified immunity. Because Defendants merely state the legal standard for qualified immunity with no analysis, the Court will not consider that argument.

I. **Legal Standards**

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or summary judgment pursuant to Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Defendants have submitted numerous exhibits with the Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for

summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Fletcher has submitted a Rule 56(d) affidavit requesting discovery, but he has not specified what discovery he requires in order to respond to the Motion. Rather, he has submitted his own factual affidavit, over 100 pages of exhibits, and a memorandum of law in opposition to the Motion in which he cites his documentary exhibits. Under these circumstances, the Court concludes that discovery is not necessary to resolve the Motion and, on issues requiring consideration of the exhibits submitted by both sides, will treat the motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light

most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II. First Amendment

It is undisputed that in May 2017, ECI instituted a policy by which certified mail would no longer be treated as legal mail, and that as a result of that change, mailroom staff began signing for certified mail addressed to Fletcher, and the mail took up a week to reach Fletcher. These allegations do not support a claim for a violation of the First Amendment. While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although the First Amendment protects prisoners in their sending and receiving of mail, restrictions on the mail are permitted if they are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *United States. v. Stotts*, 925 F.2d 83, 85-86 (4th Cir. 1991). In considering whether a restriction is so related, courts consider (1) whether the regulation is related to a legitimate and neutral governmental objective; (2) whether there are alternatives that remain open to inmates to

exercise the right; (3) the impact that accommodating the asserted right will have on guards and other prisoners, and on the allocation of prison resources; and (4) whether the existence of an easy and obvious alternative shows that the regulation is an exaggerated response by prison officials. *Turner*, 482 U.S. at 89-90. A higher level of scrutiny is appropriate for incoming mail as compared to outgoing mail. *See Thornburgh*, 490 U.S. at 413.

Here, Fletcher's complaint that ECI stopped giving certified mail the special treatment afforded to legal mail does not state a First Amendment violation. If anything, it appears that ECI has closed a loophole that Fletcher was using to get special treatment for non-legal mail by having friends and family send it by certified mail. Fletcher has identified no authority providing him with a constitutional right to sign for non-legal certified mail, or that the kinds of delays he has described violate the First Amendment. Rather, courts have found that regulation of prison mail such as opening and inspecting the mail, sending back items that violate prison policies, and not providing the inmate with certified mail receipts do not violate constitutional rights. *See Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Altizer v. Deeds*, 191 F.3d 540, 549 (4th Cir. 1999) (finding that inspection of outgoing mail serves a legitimate penological interest). Notably, in September 2016, only a few months before the policy change at the ECI mailroom, 80 defendants were indicted in this Court for a racketeering conspiracy and related charges arising from alleged smuggling of contraband to inmates at ECI, and since then there have been over 30 convictions in that case. *See United States v. Bohl*, No. DKC-16-0484 (D. Md. 2016); Fed R. Evid. 201 (allowing a court to take judicial notice of facts not subject to reasonable dispute). The legitimate governmental interest involved in scrutinizing incoming mail, including mail containing money orders and photographs, is self-evident. While it is clear that Fletcher is in no way implicated in that case, the security interest at stake makes clear that there is no First Amendment

claim arising from ECI's policies and practices of signing for certified mail, inspecting mail and withholding contraband and other material that violates prison policies, and permitting limited delays in delivery.

Likewise, there can be no argument that ECI's mail policy or the resulting delays in delivery violated Fletcher's First Amendment right to access the courts. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right, however, is limited to protecting an inmate's right "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Thus, to state a claim for a denial of access to the courts, a plaintiff must allege facts showing that his ability to advance such a claim was actually harmed. *Id.* at 351; *see Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) (requiring a prisoner claiming a denial of the right of access to the courts to make specific allegations and identify actual injury resulting from prison officials' conduct). There must be "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). By its terms, the changes to the handling of certified mail did not apply to legal mail. To the extent that any of Fletcher's mail related to legal matters, he has made no argument that the delays in his mail affected any particular legal case or claim and thus has not stated a First Amendment access-to-courts claim. *See Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997) (finding that limited opening of legal mail outside the presence of the inmate did not violate the First Amendment right of access to the courts).

## III. Due Process

Even if construed as asserting a federal due process claim, the allegations in the Amended Complaint also fail to state such a claim. Fletcher primarily argues that the one-week delay in delivering mail contravenes state regulations and policies governing the activities of DOC prisons. Md. Code Regs. § 12.02.20.05(D). However, a failure to comply with prison policies and regulations does not support a constitutional claim for a violation of due process under the Fourteenth Amendment. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*). A due process claim must be grounded in a protected liberty or property interest. In a prison context, a constitutionally protected liberty interest exists when a prison's actions may affect the duration of the prisoner's term of imprisonment. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (finding a state-created liberty interest in parole); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (finding a state-created liberty interest in good conduct credits). Otherwise, such a liberty interest exists only when a prison policy imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Incidents of mishandling of mail, such as opening it outside the inmate's presence, do not support a due process violation. *See Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983). Here, where there is no allegation that the integrity of Fletcher's mail was compromised, the ECI mail policy of signing for certified mail and releasing such mail more slowly than before does not violate due process.

To the extent Fletcher argues that delays in receiving mail have caused him to lose access to property such as commissary items, or that the confiscation of mailed money orders or photographs for violating prison policies deprived him of personal property, claims of negligent or intentional deprivation of personal property by a prison official do not implicate the Due Process

11

Clause. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[W]e hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available."); *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986) (finding that the negligent deprivation of personal property does not implicate due process rights). In the case of lost or stolen property, sufficient due process is afforded to a prisoner if there is an adequate post-deprivation remedy process. *Hudson*, 468 U.S. at 533. The right to seek damages and injunctive relief in Maryland courts pursuant to the Maryland Tort Claims Act constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982). Thus, Fletcher has not stated a constitutional claim arising from any alleged loss of property in the mails.

Where the Court will dismiss all federal constitutional claims, to the extent that Fletcher has asserted a violation of a specific state law, the Court will decline to exercise supplemental jurisdiction over such a claim. *See* 28 U.S.C. § 1367(c)(3) (2018).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, will be GRANTED. The Complaint will be DISMISSED. A separate Order shall issue.

Date: February 25, 2020

THEODORE D. CHUANG
United States District Judge

12